**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **XINUOS, INC.,** | ) |
| Plaintiff, | ) |
| v. | ) CASE NO.: 3:21-cv-00031 |
| **INTERNATIONAL BUSINESS MACHINES CORP.** and **RED HAT, INC.,** | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER TO THE UNITED STATES <u>DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

      A.      Project Monterey................................................................................................2

      B.      The SCO Action.................................................................................................3

      C.      Xinuos Obtains Certain of SCO's Rights. ..................................................3

      D.      IBM Plans to Acquire Red Hat, and Xinuos Threatens Litigation. ...........................4

GOVERNING LAW......................................................................................................................5

ARGUMENT .................................................................................................................................6

I.      THE MOTION FOR TRANSFER SHOULD BE GRANTED. ........................................6

      A.      Venue is Appropriate in the Southern District of New York................................6

      B.      The Private Interest Factors Favor Transfer. ...........................................................7

      C.      The Public Interest Factors Favor Transfer. ..........................................................11

II.     THIS COURT'S DECISION OF DEFENDANTS' MOTION TO DISMISS SHOULD BE DEFERRED PENDING RESOLUTION OF THE MOTION FOR TRANSFER. ...........................................................................................................11

# **TABLE OF AUTHORITIES**

**Page**

CASES

*Benjamin v. Esso Standard Oil Co.*, ,
    2009 WL 2601439 (D.V.I. Aug. 18, 2009) .................................................................. 7, 10

*Consol. Properties, Inc. v. Sherwin-Williams Co.*,
    2018 WL 4610622 (D.V.I. Sept. 25, 2018) ..................................................................... 5, 6

*Cost Bros., Inc. v. Travelers Indem. Co.*,
    760 F.2d 58 (3d Cir. 1985) .............................................................................................. 11

*Federal Trade Commission v. Illumina, Inc. et al*,
    1-21-cv-00873 (D.D.C. Apr. 30, 21) ............................................................................... 10

*Fellner ex rel. Est. of Fellner v. Philadelphia Toboggan Coasters, Inc.*,
    2005 WL 2660351 (E.D. Pa. Oct. 18, 2005) ..................................................................... 8

*Gore v. Stryker Corp.*,
    No. CIV.A. 09-2987, 2010 WL 3069653 (E.D. Pa. Aug. 4, 2010) ................................... 9

*In re SCO Group, Inc., et al.*,
    No. 07-11337, Dkt. No. 1 (D. Del. Bankr. Sept. 18, 2007) ............................................... 3

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ..................................................................................... 6, 7, 11

*Kressen v. Fed. Ins. Co.*,
    122 F. Supp. 2d 582 (D.V.I. 2000) ........................................................................ 6, 7, 11

*McDonnell Douglas Corp. v. Polin*,
    429 F.2d 30 (3d Cir. 1970) .............................................................................................. 12

*MoneyCat Ltd v. PayPal Inc.*,
    2014 WL 2042699 (D. Del. May 15, 2014) .................................................................... 12

*Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*,
    917 F. Supp. 324 (D.N.J. 1995) ..................................................................................... 7, 9

*Perez v. Hyannis Air Serv.*, Inc.,
    No. 1:10-CV-86, 2010 WL 5157135 (D.V.I. Dec. 1, 2010) .......................................... 7, 8

*RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*,
    2009 WL 3297310 (D. Del. Oct. 14, 2009) .................................................................... 12

*Rohn v. AT & T Mobility, LLC*,
    No. 2007-CV-0080, 2008 WL 4525817 (D.V.I. Oct. 3, 2008) ........................................ 12

*S.C. Johnson & Son, Inc. v. Gillette Co.*,
    571 F. Supp. 1185 (Ill. 1983) ............................................................................................ 8

*Solomon v. Continental American Life Ins. Co.*,
    472 F.2d 1043 (3d Cir. 1973) ........................................................................................... 9

*U.S. ex rel. Davis v. Lockheed Martin Corp.*,
    No. 1:06-CV-13, 2009 WL 3245444 (D.V.I. Oct. 5, 2009) ......................................... 9, 11

*Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l, Inc.*,
    2009 WL 2413670 (D.V.I. Aug. 4, 2009) ....................................................................... 12

## STATUTES

28 U.S.C. § 1391(b) ................................................................................................................ 5, 6

28 U.S.C. § 1404 ..................................................................................................................... 5, 7

28 U.S.C. § 1404(a) ..................................................................................................................... 1

Defendants International Business Machines Corp. ("IBM") and Red Hat, Inc. ("Red Hat") (collectively "Defendants"), by their undersigned counsel, respectfully submit this memorandum of law in support of Defendants' motion to transfer venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

In March of 2019, when Plaintiff Xinuos, Inc. first threatened litigation against Defendants IBM and Red Hat, this Court was an improper venue. None of the parties or potential witnesses resided here; none of the alleged events or omissions giving rise to the claims occurred here; and none of Xinuos's alleged harm occurred here.

Xinuos's decision to relocate since first threatening IBM with litigation does not transform this District into a convenient and just venue for those claims. The Complaint offers nothing beyond boilerplate allegations that could apply to any federal jurisdiction to explain why this case should proceed here. The Court should reject this gamesmanship, and transfer this action to the United States District Court for the Southern District of New York, for the following reasons:

*First*, there is no allegation that any portion of IBM's alleged infringement or anticompetitive conduct occurred in or was directed from this District, let alone any allegation that this District was the center of alleged scheme giving rise to Xinuos's claims. Plaintiff gives no justification whatsoever for litigating a case whose facts relate back to alleged agreements between New York, Delaware, North Carolina, and California entities here beyond the mainland United States.

*Second*, the key witnesses in this case are located far from this District. Such massive and unnecessary inconvenience to third parties, including ex-employees of both Plaintiff and Defendants who live beyond this Court's subpoena power, is another factor in favor of transfer.

*Third*, the courts and residents of the U.S. Virgin Islands have no special interest in deciding this case, which involves a New York corporation's alleged misuse of copyrighted code from a Utah entity (which Xinuos, then a Nevada entity that subsequently moved operations to California, purchased out of bankruptcy), and its subsequent allegedly anticompetitive merger with a North Carolina entity. Plaintiff asserts claims that date back nearly two decades, only two years of which overlap with its presence in this District, and effects of which are allegedly felt nationwide. Absent a local controversy, the public interest factors also weigh in favor of transfer to the United States District Court for the Southern District of New York.

For these reasons and other reasons developed more fully below, this case should be transferred to the Southern District of New York, a far more convenient and suitable forum for this action.

## FACTUAL BACKGROUND

### A. Project Monterey

On October 23, 1998, The SCO Group, Inc., a Delaware corporation headquartered in Utah ("SCO"), entered into a Joint Development Agreement ("JDA") with Defendant IBM, a New York corporation headquartered in Armonk, New York, to facilitate the development of a new UNIX operating system. (*See* Declaration of John Thompson (hereinafter, "Thompson Decl."), ¶ 4 & Ex. 1,[1] JDA.) The joint venture was known as Project Monterey. (*See* Compl. ¶ 55.) The Project Monterey JDA contains a New York choice of law provision, with legal notices to be served on IBM in Austin, Texas, and on SCO in Santa Cruz, California. (Ex. 1, §§ 22.2, 22.3.) The IBM employees and former employees most knowledgeable about the negotiations preceding the Project Monterey JDA, and the respective rights of the parties as concerns the fruits of Project

---

[1] All exhibits referred to herein are those attached to the Thompson Declaration..

2

Monterey are: John Kelly, who resides in the New York City metropolitan area; Haig McNamee, a resident of New York City; Ron Lauderdale, a resident of Greenwich, Connecticut; Ross Mauri, a resident of Poughkeepsie, New York; and Sharon Dobbs, William Sandve, and Robert LeBlanc, each a resident of Austin Texas. (Thompson Decl. ¶ 7.)

### B. The SCO Action

IBM eventually withdrew from Project Monterey. (*See* Compl. ¶57.) In 2003, SCO sued IBM in the Third Judicial District in the District Court of Salt Lake County, Utah, and IBM promptly removed the case to federal court. *See SCO Grp. v. Int'l Bus. Machines Corp.*, No. 03-cv-00294 (D. Utah) (the "SCO Action"). SCO claimed that IBM had "misappropriated the confidential and proprietary information from SCO" learned through Project Monterey, including, *inter alia*, by entering into a global agreement with Defendant Red Hat on August 17, 2000, to expand its Linux offerings. (Ex. 2 ¶¶ 88–89.)

The allegations in SCO's Second Amended Complaint are the same as Xinuos's allegations here: both parties claims that IBM used Project Monterey as a cover to transplant critical pieces of SCO-owned UNIX code into IBM's new Linux operating system, AIX, in violation of various agreements related to the licensing of UNIX software. (*See, e.g.*, Compl. ¶ 56 ("Through Project Monterey, IBM gained confidential access to the Code."); *id.* ¶ 60 ("The stolen Code has been copied without permission into at least six different updates of AIX.").) Significantly, not one of the thousands of IBM employees who contributed to the development of AIX resides in the U.S. Virgin Islands. (Thompson Decl.¶ 10 & Ex. 3.)

### C. Xinuos Obtains Certain of SCO's Rights.

Four years into the original litigation arising from IBM's involvement in Project Monterey, SCO filed for bankruptcy. *In re SCO Group, Inc., et al.*, No. 07-11337, Dkt. No. 1 (D. Del. Bankr.

3

Sept. 18, 2007).  In the course of that bankruptcy proceeding, SCO's trustee sold the company's UNIX assets developed after 1995 to unXis, Inc., a Delaware corporation headquartered in Nevada. (*See* Thompson Decl. ¶¶ 11-12 & Ex. 4, Asset Purchase Agreement.)  The Asset Purchase Agreement between SCO and unXis, dated January 19, 2011, is governed by Delaware law, with notices to be served on unXis in Delaware.  (*Id*.§§ 10.5, 10.13.)  In 2013, unXis changed its name to Xinuos and relocated its operations to San Mateo, California.  (Thompson Decl. ¶ 12.)  For eight years following its acquisition of SCO's post-1995 UNIX assets, Xinuos did not assert or threaten any claims against IBM or Red Hat.

> **D.     IBM Plans to Acquire Red Hat, and Xinuos Threatens Litigation.**

On October 28, 2018, IBM announced that was it acquiring Defendant Red Hat, a Delaware corporation headquartered in North Carolina.  (*See* Thompson Decl. ¶ 13 & Ex. 5, October 29, 2018 IBM Shareholder Presentation.)  Five executives of the two companies participated in the announcement, and were involved in negotiating the deal: Virginia Rometty, former IBM Chairman & CEO, a resident of Armonk, NY; James Kavanaugh, IBM Senior Vice President, who resides in the New York City Metropolitan area; James Whitehurst, President & CEO of Red Hat, who resides in Raleigh, North Carolina; Paul Cormier, Red Hat President of Products and Technologies, a resident of Leominster, Mass; and Arvind Krishna, current IBM Chairman & CEO, who resides in the New York City Metropolitan area. (Thompson Decl. ¶ 14.)

The acquisition was approved around the world by every regulatory agency that was required to review it prior to closing, including the U.S. Department of Justice and the European Commission, the latter of which found that the acquisition "would raise no competition concerns," and would, in fact, "increase choice for enterprise customers who could more easily shift

4

workloads between on premise servers and multiple public and private clouds." (*See* Thompson Decl. ¶ 17 & Ex. 7.)

Five months later, on March 26, 2019, counsel for Xinuos sent a letter addressed to IBM's CEO and General Counsel, both of whom work at IBM headquarters in Armonk, New York, accusing IBM of "unauthorized uses of [Xinuos's] copyrighted code in IBM's AIX and Linux-based operating system products, and IBM's unauthorized contribution of Xinuos's copyrighted code to both the Red Hat Linux and SUSE Linux." (*See* Ex. 6, March 26, 2019 Letter from Gabriel M. Ramsey.) As it does in its complaint, Xinuos's March 2019 letter claimed that IBM and Red Hat had incorporated code previously belonging to SCO into their Linux platforms, including AIX.

When the March 2019 letter reached IBM, announcing Xinuos's intention to seek redress for alleged copyright infringement and its concerns about "IBM's rapidly approaching acquisition of Red Hat," Xinuos was headquartered in Berkeley, California. (Thompson Decl. ¶ 15 & Ex. 6.) Xinuos moved its operations to the Virgin Islands in May 2019. (*See id.* ¶ 18 & Ex. 9.)

## GOVERNING LAW

A civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). "Even when venue is proper, 28 U.S.C. § 1404 in pertinent part provides: '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . .'" *Consol. Properties, Inc. v. Sherwin-Williams Co.*, 2018 WL 4610622, at *2 (D.V.I. Sept. 25, 2018)

5

(quoting 28 U.S.C. § 1404)). "Before turning to the relevant considerations, the Court must first determine whether the transferee venue is one in which the case might have been brought." *Kressen v. Fed. Ins. Co.*, 122 F. Supp. 2d 582, 588 (D.V.I. 2000) (internal quotation marks omitted).

If venue is proper in the transferee jurisdiction, then courts consider an array of potential private and/or public interests. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995) The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted). The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

## ARGUMENT

**I.   THE MOTION FOR TRANSFER SHOULD BE GRANTED.**

**A.   Venue is Appropriate in the Southern District of New York.**

Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because a substantial part of IBM's alleged business activities giving rise to Plaintiff's claims, including its negotiation of the Project Monterey JDA and its acquisition of Red Hat, were directed from its corporate headquarters in Armonk, New York.  (*See* Compl. ¶ 23; Thompson Decl. ¶¶ 7 & 14.) Furthermore, venue is appropriate in any jurisdiction where any defendant is subject to general

6

jurisdiction due to the location of its principal place of business and place of incorporation. *Consol. Properties, Inc. v. Sherwin-Williams Co.*, No. CV 2017-13, 2018 WL 4610622, at *3 (D.V.I. Sept. 25, 2018). Because IBM's principal place of business is in the Southern District of New York, venue is appropriate there.

### B. The Private Interest Factors Favor Transfer.

Courts in this Circuit generally recognize that a plaintiff's forum choice is entitled to deference. *See Jumara*, 55 F.3d at 880. However, when the central dispute in a lawsuit arose from events that occurred almost exclusively in another forum, as is the case here, courts give substantially less weight to the plaintiff's forum choice. *See Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) (citations omitted). Furthermore, as this Court has noted, many jurisdictions have held "that under a § 1404 motion to transfer, the Plaintiff's choice of forum is not entitled to as much weight as it is when deciding whether to dismiss under the doctrine of forum non conveniens." *Kressen v. Fed. Ins. Co.*, 122 F. Supp. 2d 582, 590 (D.V.I. 2000) (collecting cases).

When assessing whether transfer is appropriate, two of the private interest factors are paramount: (1) where the key events underlying the claims took place, *see Benjamin v. Esso Standard Oil Co.*, , 2009 WL 2601439, at *4 (D.V.I. Aug. 18, 2009) ("None of the key events or omissions underlying Plaintiff's claims occurred in the forum selected . . . this factor favors transfer."), and (2) the location of the witnesses, *see Perez v. Hyannis Air Serv.*, Inc., No. 1:10-CV-86, 2010 WL 5157135, at *3 (D.V.I. Dec. 1, 2010) (where "the vast majority of the significant witnesses" do not reside in the plaintiff's chosen forum, "the convenience of the witnesses factor weighs in favor of transfer."). Both of those factors plainly support transfer in this case.

As to the former, Xinuos does not (and cannot) allege that "the center of the accused activity" described in the Complaint was the U.S. Virgin Islands. *Perez*, 2010 WL 5157135, at *2 (D.V.I. Dec. 1, 2010) (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.,* 571 F. Supp. 1185, 1187-88 (Ill. 1983)). There is no allegation that any of the claimed copyright infringement, or any of the acts underlying the alleged anticompetitive agreement(s) between Red Hat and IBM, occurred in this district. If the Court hones in on the two primary allegations of harm to Xinuos – the allegedly stolen code and the anticompetitive effects of the Defendants' supposed "agreements" and subsequent merger – it becomes clear that each occurred prior to Xinuos announcing its relocation to the Virgin Islands. Specifically, Xinuos allegedly discovered IBM's infringement of its Code in March 2019, IBM's merger with Red Hat closed in July 2019, and their alleged agreements occurred prior to that. (*See* ¶ 73; Thompson Decl. Ex. 8 (IBM 8-K); Ex. 9 (Xinuos Press Release)). Even if the Court finds it plausible that Xinuos suffered some harm while located in the Virgin Islands, it is the location of acts giving rise to that alleged harm – IBM's and Red Hat's alleged conduct – that determines the appropriate venue for this action. *See DaimlerChrysler Corp. v. Askinazi*, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) (citations omitted) ("venue is not proper in a district if injury is the only event occurring in that district"); *Herbert v. Christiana Care Corp.*, 2004 WL 2554562, at *2 (E.D. Pa. Nov. 8, 2004) ("Cases in this and other jurisdictions have held that where tortious conduct occurs in one jurisdiction, a mere effect of that conduct being felt in a second is not enough to support venue in that second jurisdiction.") None of the Defendants' conduct is specifically alleged to have occurred in this District.

Next, the location of the witnesses also supports transfer to the Southern District of New York, which is necessary to ensure that the "important questions of liability will be addressed by . . . live testimony," which is more easily compelled there. *Fellner ex rel. Est. of Fellner v.*

*Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351, at *6 (E.D. Pa. Oct. 18, 2005). Of the numerous parties, third parties, employees and ex-employees of both, only Xinuos and its management team are located in the Virgin Islands. But as Xinuos's allegations and correspondence make clear, those individuals do not possess the knowledge critical to trying this case – all of the IBM and Red Hat employees and ex-employees, as well as many of the employees and ex-employees of Xinuos itself as well as all of the witnesses from non-party SCO (who will be necessary witnesses regarding the alleged copyright infringement), are located in the continental United States, many of them within the 100-mile subpoena power of the Southern District of New York. (Thompson Decl. ¶¶ 7 & 14.) If the Court allows this case to proceed here, many of the essential party and non-party witnesses will be effectively excused from participating in this action. *See Nat'l Prop. Invs. VIII v. Shell Oil Co.*, 917 F. Supp. 324, 328 (D.N.J. 1995) ("'[T]he amenability of at least seven crucial witnesses to compulsory process in North Carolina and not in New Jersey" weighed in favor of transfer.") (quoting *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973)).

Even worse for the prospect of a fair adjudication of the facts relevant to this litigation, the necessary witnesses may not be able to make it to this jurisdiction for trial. When non-party witnesses are located beyond the 100-mile radius of this Courts' subpoena power – as witnesses living in the contiguous 48 necessarily are in relation to the Virgin Islands – "this jurisdiction is inconvenient for the witnesses . . . [and] this factor weighs in favor of transfer." *U.S. ex rel. Davis v. Lockheed Martin Corp.*, No. 1:06-CV-13, 2009 WL 3245444, at *3 (D.V.I. Oct. 5, 2009); *see also Gore v. Stryker Corp.*, No. CIV.A. 09-2987, 2010 WL 3069653, at *5 (E.D. Pa. Aug. 4, 2010) (transfer granted where "several key witnesses in this case reside outside the 100–mile subpoena

9

radius of the [court], and because deposition or videotape testimony may not be satisfactory in this case").[2]

Finally, the other two private interest factors are, at worst, neutral with respect to whether the venue of this case should be transferred. Where, as here, the parties are both corporate entities represented by outside counsel located in the mainland United States, neither will be inconvenienced by transfer. *Cf. Perez*, 2010 WL 5157135, at *2. And even if there were an imbalance in resources, transfer would be appropriate because "both sides can process and try the case more easily, cheaply, and efficiently" in a district where a greater proportion of the witnesses are subject to the Court's subpoena power. *Fid. Leasing, Inc. v. Metavec Corp.*, No. CIV. A. 98-6035, 1999 WL 269933, at *2 (E.D. Pa. Apr. 29, 1999) (jurisdiction proper where parties with knowledge of contract negotiations were located). And where physical evidence of record and other documents can be transported electronically or otherwise, as it surely has in the SCO Action, the location of evidence factor is neutral as well. *See Consol. Properties, Inc. v. Sherwin-Williams Co.*, No. CV 2017-13, 2018 WL 4610622, at *6 (D.V.I. Sept. 25, 2018) (location of evidence factor neutral where "there is nothing in the record to suggest that either party's documentary evidence could not be copied and produced in the alternative forum").

Because the balance of the private interest factors weighs in favor of transfer, the motion should be granted.

---

[2] And that is to say nothing of the continuing complications in the federal district courts caused by pandemic-related restrictions. As one federal court recently observed, transfer based on witness convenience and safety is a "substantial factor [which] holds even greater force during the ongoing COVID-19 pandemic." *Federal Trade Commission v. Illumina, Inc. et al*, 1-21-cv-00873 (D.D.C. Apr. 30, 21). To the extent pandemic-related restrictions may still be in effect so long as there is a declared federal state of emergency, they also support transferring this case to a court in closer proximity to the key witnesses.

### C. The Public Interest Factors Favor Transfer.

The only relevant public interest factor here is the relationship of this district's courts and this district's jury pool to the case. *See Benjamin*, 2009 WL 2601439, at *6 (granting transfer where "jurors should not be burdened with adjudicating a matter concerning conduct which was largely localized [elsewhere]," without analyzing other factors). The public interest factors favor transfer where "the Virgin Islands' citizens and courts have little interest in a case involving parties and events whose only nexus to the Virgin Islands is Plaintiff's recent relocation there." *Kressen v. Fed. Ins. Co.*, 122 F. Supp. 2d 582, 589–90 (D.V.I. 2000) (citing *Jumara*, 55 F.3d at 879–80). The fact that Xinuos's alleged antitrust claims "may have occurred throughout the United States as well as in the Virgin Islands" does not change the analysis; as one court in this jurisdiction has held, where plaintiff alleged a nationwide violation that impacts the Virgin Islands no more than every other federal judicial district, "it is clear that [the] matter does not center on a local controversy," and the public interest factors weigh in favor of transfer. *Davis*, 2009 WL 3245444, at *3.

The only reason this case and this motion are before this Court is because Xinuos moved its headquarters here while gearing up to sue IBM and Red Hat. The pretext is clear; the U.S. Virgin Islands, its residents, and this Court, have no special interest in adjudicating this case. The transfer motion should be granted in the interests of justice and for the convenience of the parties and witnesses.

## II. THIS COURT SHOULD RULE ON THE MOTION FOR TRANSFER BEFORE TURNING TO THE MOTION TO DISMISS.

Case law provides that this court should not rule on the Defendants' motion to dismiss before deciding this concurrently-filed motion for transfer. As many courts in the Third Circuit have held, when "[a] motion to dismiss or transfer and [a] motion to stay are presently under

11

consideration, this court should first determine whether the case should be transferred." *RAIT P'ship, L.P. v. Fieldstone Lester Shear & Denberg, LLP*, 2009 WL 3297310, at *3 (D. Del. Oct. 14, 2009), *report and recommendation adopted,* 2010 WL 786551 (D. Del. Mar. 3, 2010); *see also Rohn v. AT & T Mobility, LLC*, No. 2007-CV-0080, 2008 WL 4525817, at *1 (D.V.I. Oct. 3, 2008) (granting a change of venue motion where it would that "would effectively resolve the claims . . . as far as this Court is concerned").

Courts in the Third Circuit encourage parties to make motions for transfer "as early in the proceedings as practicable. It is certainly preferable that 'the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.'" *MoneyCat Ltd v. PayPal Inc.*, 2014 WL 2042699, at *3 (D. Del. May 15, 2014) (quoting *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970)).[3] The same rule applies with equal force here: this Court should not invest its time and resources on a substantive motion before it determines that it is the appropriate body to decide

---

[3] District courts elsewhere routinely agree that "[w]here a motion to transfer venue is filed concomitantly with a dispositive motion, the transferor court typically will resolve the venue question without ruling on the dispositive motion, which is more properly resolved by the transferee court." *Marom v. Pierot*, , 2020 WL 1862974, at *2 (S.D.N.Y. Jan. 16, 2020); *see also Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 413 (S.D.N.Y. 2017) (declining to rule on three pending motions, including a motion to dismiss, after granting motion to transfer venue, and finding that the motions would be more properly addressed by the transferee court); *Hernandez v. Office of Comm'r of Baseball*, No. 17-CV-00456 (MRB), 2018 WL 4761472, at *5 (S.D. Ohio, Sept. 20, 2018) ("In theory, the undersigned could deny the Rule 12(b)(6) motion without prejudice to refiling in the transferee court; however, in an effort to comport with the transferee court's preferences, the undersigned declines to pass on the Rule 12(b)(6) relief at all, so that the transferee court will be at liberty to resolve such motions or to solicit re-briefing on them") (quotations and citations omitted); *Davis v. White*, No. RDB-15-1108, 2016 WL 1159206, at *1, 7 n.6 (D. Md. Mar. 24, 2016) (granting motion to transfer venue and denying, without prejudice to renew in transferee court, the motion to dismiss, noting that the transferor court will not determine whether the allegations survive Rule 12(b)(6) as the "[t]he sufficiency of the First Amended Complaint, however, is a matter reserved for the transferee court").

such a motion. Therefore, this Court should rule on the Motion to Transfer before considering the Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, IBM and Red Hat respectfully request that the Court transfer this action to the United States District Court for the Southern District of New York.

Respectfully submitted,

**DUDLEY NEWMAN FEUERZEIG LLP**

**DATED:** June 7, 2021

By: /s/ Stefan B. Herpel
**STEFAN B. HERPEL** (V.I. Bar No. 1019)
1131 King Street, Suite 204
Christiansted, St. Croix
U.S. Virgin Islands  00820-4971
Telephone:    (340) 773-3200
E-Mail:         sherpel@DNFvi.com

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

Adam Wolfson, Esq.
865 S. Figueroa Street – 10th Floor
Los Angeles, CA 90017
E-Mail: adamwolfson@quinnemanuel.com

Debra D. Bernstein, Esq.
2177 Tillingham Court
Atlanta, GA 30338
E-Mail: debrabernstein@quinnemanuel.com

Alexander Rudis, Esq.
51 Madison Avenue
New York, NY 10010
E-Mail: alexanderrudis@quinnemanuel.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

It is hereby certified that on this 7th day of June, 2021, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

J. Daryl Dodson, Esq.
**MOORE DODSON RUSSELL & WILHITE, P.C.**
P.O. Box 310
St. Thomas, VI 00804-0310
E-Mail: daryl@mdrvi.com

Jacob S. Canter, Esq.
**CROWELL & MORING LLP**
3 Embarcadero Center – 26th Floor
San Francisco, CA 94111
E-Mail: JCanter@crowell.com

Mark A. Klaplow, Esq.
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
E-Mail: mklapow@crowell.com

Gabriel M. Ramsey, Esq.
**CROWELL & MORING LLP**
3 Embarcadero Center – 26th Floor
San Francisco, CA 94111
E-Mail: GRamsey@crowell.com

Kayvan Ghaffari, Esq.
**CROWELL & MORING LLP**
3 Embarcadero Center – 26th Floor
San Francisco, CA 94111
E-Mail: kghaffari@crowell.com

Warrington S. Parker, Esq.
**CROWELL & MORING LLP**
3 Embarcadero Center – 26th Floor
San Francisco, CA 94111
E-Mail: WParker@crowell.com

/s/ Stefan B. Herpel